FILED
OCT 2 6 2010

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

KRISTIN BARINAGA,

Plaintiff,

v.

JP MORGAN CHASE & CO., a federally chartered bank,

Defendant.

Case No.: 10-CV-266-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge:

Opinion

Plaintiff Kristin Barinaga ("Barinaga") is one of the many Americans currently facing foreclosure on their family residence. In her complaint, Barinaga alleges that defendant JP Morgan

Chase & Co. ("Chase"), failed to follow through on its promise to her to modify the terms of her mortgage to allow her to remain in her home. Barinaga alleges claims for breach contract and the duty of good faith and fair dealing, fraud in the inducement, and violation of Oregon's Unlawful Trade Practices Act. Barinaga agrees to withdraw her Trade Practices Act claim based on the holding of *Lamm v. Amfac Mortgage Corp.*, 44 Or. App. 304 (1980), in which the Oregon court held that the Trade Practices Act does not cover the business of lending money. Chase moves to dismiss Barinaga's remaining three claims.

Barinaga has failed to allege facts sufficient to establish that the oral modification of the terms of her loan were supported by adequate consideration or that the parties had a meeting of the minds on all essential terms of the modification. Furthermore, the conduct she alleges to be a breach of the duty of good faith and fair dealing is specifically authorized under the terms of the written contracts and was within the contemplation of the parties at the time those contracts were signed. Accordingly, Barinaga's claims for breach of contract and the contractual duty of good faith and fair dealing are be dismissed with prejudice for failure to state a claim. With regard to Barinaga's fraud claim, the court finds that she has alleged fraud with the specificity required by Rule 9(b) and has included all of the elements of a prima facie claim for fraudulent misrepresentation. Chases's motion to dismiss Barinaga's Third Claim for Relief for fraud is be denied.

*Background*

Barinaga alleges in her complaint that in August 2006, she borrowed almost $1.5 million from Washington Mutual Bank at a variable interest rate starting at 7.5 % and for a term of 30 years (the "Loan"). The Loan was secured by Barinaga's residence located in Portland, Oregon (the "Property"). Under the terms of the Loan, Barinaga was to make initial monthly payments in the

amount of $10,444.00.[1]

The Deed of Trust[2] securing the Loan obligated Barinaga to "pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note." (Mendoza Decl. Ex. 2 ¶ 1.) The Deed of Trust provided that:

> This Security Instrument cannot be changed or modified except as otherwise provided herein or by agreement in writing signed by Borrower, or any Successor in interest to Borrower and Lender. Extension of the time for payment or modification of amortization of the sums secured by the Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successor in Interest of Borrower. . . . No waiver by Lender of any right under this Security Instrument shall be effective unless in writing. Waiver by Lender of any right granted to Lender under this Security Instrument or of any provision of this Security Instrument as to any transaction of occurrence shall not be deemed a waiver as to any future transaction or occurrence.

(Mendoza Decl. Ex. 2 ¶ 12.)

Barinaga experienced financial difficulties and became unable to make her mortgage payments in October 2008. About the same time, Chase acquired the assets of failed Washington Mutual Bank, including the Loan.[3] In June 2009, Barinaga asked Chase for a modification to her mortgage. Barinaga understood that Chase would study her income and financial information closely

---

[1]The court recognizes that, according to the documents offered by Chase, the Loan was made for the construction of the residence and was distributed over the period of the construction. Payments during the construction period were to be interest only.

[2]The Loan documents were not attached to the Complaint but were offered by Chase in support of its motion to dismiss. While a district court may not consider matters outside of the complaint on a motion to dismiss, documents that are not attached to the complaint but which a plaintiff's claim necessarily rely on may be considered when offered to the court by the defendant. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). The Loan documents offered by Chase define the obligations between the parties and are necessarily relied on by Barinaga in asserting her claims.

[3]A number of the loan documents refer to Wells Fargo rather than Chase. Accordingly, the court will refer to Wells Fargo and Chase interchangeably.

before determining if she was eligible for a modification.

In July 2009, Chase offered a trial modification arrangement to Barinaga which required her to make three agreed-upon monthly payments before a final modification would occur. According to Barinaga, Chase utilized the trial modification plan as a condition precedent to a final modification and "routinely informed its borrowers that the trial modification was a mere formality and the final modification was forthcoming." (Compl. ¶ 6.)

By letter dated July 30, 2009, Chase formalized the trial modification offer for Barinaga. The letter stated:

> WE ARE A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT. AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.
>
> WE HAVE TOLD A CREDIT BUREAU AGENT ABOUT A LATE PAYMENT, MISSED PAYMENT OR OTHER DEFAULT ON YOUR ACCOUNT. THIS INFORMATION MAY BE REFLECTED IN YOUR CREDIT REPORT.
>
> RE: Loan Number: 0705912632
> Property Address: 11051 Sw Riverwood Rd
> Portland OR 97219
>
> Dear Kristin Barinaga :
>
> We offer programs for customers who are experiencing hardships that prevent them from making their home loan payments. We may be able to assist you.
>
> This is due to your reason for default – Loss of Income
>
> Since you have told us you're committed to pursuing a stay-in-home option, you have been approved for a Trial Plan Agreement. If you comply with all the terms of the Agreement, we'll consider a permanent workout solution for your loan once the Trial Plan has been completed.
>
> Please sign and return the Trial Plan Agreement. We must receive the signed Agreement at the following address on or before 08/01/09:
>
> Washington Mutual Bank
> 255 Baymeadows Way
> Attn: LMT MONITORING TEAM

Jacksonville, FL 32256

You may also fax your signed Agreement to us at 866.282.5682.

(Mendoza Decl. Ex. 3 at 1.) The Trial Plan Agreement, which was attached to the July 30, 2009, letter, provided:

> * Your loan is now due for the months of 10/01/08 to 07/01/09.
> * You must send $0.00 to reduce your total delinquency.
> * We must receive the initial payment of $5124.50 along with your signed Trial Plan Agreement ("Agreement") by 08/01/09. After that, the payment schedule outlined below must be followed. If you do not make your payments on time, or if any of your payments are returned for non-sufficient funds, this Agreement will be in breach and collection and/or foreclosure activity will resume.
>
> Your payments must be received in our office on or before the following dates:
>
> $5124.50 09/01/09
> $5124.50 10/01/09
>
> Payments are subject to change due to escrow analysis and or interest rate changes, if applicable. If you are notified of a payment adjustment, please contact our office immediately so we can adjust the terms of your Agreement accordingly. If all payments are made as scheduled, we will reevaluate your application for assistance and determine if we are able to offer you a permanent workout solution to bring your loan current.
>
> All of the original terms of your loan remain in full force and effect, unless specifically mentioned within this Agreement. If any part of this Agreement is breached, Washington Mutual has the option to terminate the Agreement and begin or resume foreclosure proceedings pursuant to your loan documents and applicable law.
>
> You acknowledge that in the event you file a petition in bankruptcy, Washington Mutual may elect to take any and all actions necessary, including, but not limited to voiding this Agreement, filing a Motion for relief from the automatic stay or a Motion to dismiss or any permitted state law remedies, which in Washington Mutual's judgment are reasonably necessary to secure or protect our security, the value of the security and/or to enforce our rights under the original terms of your loan.

(Mendoza Decl. Ex. 3 at 1.)

Barinaga alleges that Chase employees "repeatedly represented that the trial modification plan was a mere condition precedent to the final modification plan and the three months compliance with the trial modification plan would automatically result in a final modification on identical terms" (Compl. ¶ 8.) She then executed the Trial Plan Agreement on August 8, 2009, and, in "reliance Chase's representations," began to perform under its terms. (Compl. ¶ 9.)

Barinaga made the payments for August, September, October 2009, and expected to receive final modification documents by November. When they did not arrive, she contacted Chase and was told that the delay was the result of a backlog of modification requests and was assured that the "modification was still on track and the final modification would be forthcoming." (Compl. ¶ 10.) In reliance on Chase's representations and pursuant to its instructions, Barinaga made payments of $5,124.50[4] in November and December 2009.

On December 4, 2009, Barinaga's legal counsel contacted Chase to inquire about the status of the final modification paperwork. A Chase employee represented that the paperwork would be completed by the middle of the following week. That afternoon, Barinaga received a letter from Chase notifying her that it had revoked the trial modification and would not agree to a final modification.

During the trial period, Chase contracted with a local real estate broker to perform a broker's price opinion on the value of the Property. When the broker initially contacted Barinaga in September, 2009, she represented that she had a client who was interested in purchasing the Property, which was then on the market for sale, and needed access to the Property. After being

---

[4]Barinaga alleges that the monthly payments were lowered to $5,124.00. The court will use the number found in the Trial Plan Agreement ($5,124.50) throughout the opinion for the sake of consistency.

questioned by Barinaga, the broker admitted that she did not have a client and that she was there on behalf of Chase, and advised Barinaga that she, Barinaga, was required by law to give the broker access to the Property. When Barinaga refused to give the broker access, the broker photographed the Property from the exterior. Barinaga believes that the broker's price opinion revealed that she had substantial equity in the Property, a large amount of which Chase could recover if it foreclosed on the Property.

Barinaga filed this action in state court on January 25, 2010. Chase removed the action to this court and immediately filed a motion to dismiss the complaint in its entirety.

*Legal Standard*

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court addressed the pleading standard required to adequately state a claim under the Federal Rules of Civil Procedure. Rule 8(a) governs pleadings and calls for "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a). In 2007, the Court explicitly departed from the often cited standard set forth in *Conley v. Gibson*, 355 U.S. 41 (1957). The *Conley* standard held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45-46. The *Twombly* court rejected this as an inappropriate pleading standard, and indicated that it had been taken out of its original context and should be "forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563.

Not only did *Twombly* depart from the previous standard, it emphasized the need to include

sufficient facts in the pleading to give proper notice of the claim and its basis. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (brackets omitted). Even so, the court noted that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556 (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Since *Twombly,* the Supreme Court has made it clear that the pleading standard announced therein is generally applicable to cases governed by the Federal Rules of Civil Procedure, and not just those cases involving antitrust allegations.

> As the Court held in *Twombly*, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."

*Ashcroft v. Iqbal*, __ U.S. __ , 129 S.Ct. 1937, 1949 (2009)(*quoting Twombly*, 550 U.S. at 555) (internal citations omitted); *see also Villegas v. J.P Morgan Chase & Co.*, No. C 09-00261 SBA, 2009 WL 605833, at *3 (N.D. Cal. Mar. 9, 2009) ("The *Twombly* standard, moreover, is of general application and is as easily applied to wage and hour litigation as antitrust."). The Court went on to identify two principles informing the decision in *Twombly.* The first was that, although the court must assume true all facts asserted in a pleading, it need not accept as true any legal conclusions set forth in a pleading. The second principle requires that the complaint set forth a plausible claim for relief and not merely a possible claim for relief. The Court advised that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 129 S. Ct. at 1949-50 (*citing Iqbal v. Hasty*, 490 F.3d 143, 157-158 (2nd Cir. 2007)). In conclusion, the Court wrote: "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

*Discussion*

I. First Claim for Relief - Breach of Contract

Barinaga alleges that Chase orally agreed to a permanent modification of the Loan in the event she met the condition precedent by making three payments of $5,124.50 in a timely manner and that Chase breached the oral agreement when it decided not to offer a permanent modification upon her successful completion of the trial period. Chase contends that the "no-oral-modification" language found in the Deed of Trust and the specific language of the Trial Plan Agreement defeat Barinaga's breach of contract claims.

The Loan documents require Barinaga to make payments of $10,444.00 on the first of the month. The Deed of Trust specifically provides that any extension of the time for payment does not release Barinaga from her responsibilities under the terms of the Loan and that any waiver of any right granted to Chase, or any change or modification to the Deed of Trust, must be in writing and signed by Chase. The Trial Plan Agreement indicates that the original terms of the Loan remain in full force and effect except to the extent mentioned in the Trial Plan Agreement. Barinaga argues that the representations made by Chase that the permanent modification of the Loan would occur if she successfully completed the trial period modifies the terms of these agreements. In doing so, she relies on the language of a footnote in *Bennett v. Farmers Ins. Co. of Oregon*, 332 Or. 138, 147 n.7

(2001), noting that "[o]ur case law has recognized that the parties may modify a written contract orally even if the contract contains an express provision against nonwritten modifications."

This court agrees with Barinaga that the Oregon courts allow the oral modification of a written contract containing an express no-oral-modification clause. *See Moore v. Mutual of Enumclaw*, 317 Or. 235, 241 (1993)(A party to a written contract can waive a provision of that contract by conduct or by oral representation, despite the existence of a nonwaiver clause unless otherwise prohibited by statute.) However, to be binding, the terms of an oral modification of written contract must be established by clear and convincing evidence, and must be supported by consideration. *Anderson v. Divito*, 138 Or. App. 272, 281-82 (1995).

A. Consideration

The only conduct by Barinaga that could be viewed as consideration of the oral agreement to modify the terms of the Loan was her making payments of $5,124.50, half of her monthly mortgage payment, during the trial modification period. Barinaga did not do, or agree to do, anything other than what she was already obligated to due under the terms of the Loan. The Oregon courts have consistently recognized over the years that:

> A promise to do what the promisor is already bound to do cannot be a consideration, for, if a person gets nothing in return for his promise but that to which he is already legally entitled, the consideration is unreal. Therefore, as a general rule, the performance of, or promise to perform, an existing legal obligation is not a valid consideration. This legal obligation may arise from the law independent of contract, or it may arise from a subsisting contract.

*Hoskins v. Powder Land Irrigation Co.*, 90 Or. 217, 222-23 (1918)(quoting 13 C.J. 351), *see also Collins v. Post*, 227 Or. 299, 304 (citing and relying on *Hoskins*); *Jole v. Bredbenner*, 95 Or. App. 193, 197 (1989)("A promise to do what a promissor is already legally obligated to do is not

consideration."). Accordingly, Barinaga's payment of a portion of what she was legally obligated to pay under the Loan is not adequate consideration for Chase's alleged agreement to permanently modify the terms of the Loan.

In her supplemental briefing filed after oral argument, Barinaga argued that consideration can be found in her compiling and providing financial information along with a detailed loan modification application. Barinaga relies on a case from the Southern District of California in which the court found that the completion and submission of a loan modification application was sufficient consideration for an oral agreement to postpone a foreclosure sale on a piece of real estate. The court relied specifically on a California statute which allowed the modification of a written contract either: "(1) in writing; (2) by an executed oral agreement, or (3) by an oral agreement supported by new consideration." *Vissuet v. Indymac Mortgage Serv.'s*, No. 09-CV-2321-IEG (CAB), 2010 WL 1031013, at *4 (S.D. Cal. Mar. 19, 2010)(*citing* CAL. CIV. CODE § 1986(a)-(c)). Barinaga does not assert, and there is no evidence to establish, that the alleged oral agreement[5] is controlled by California law or that Oregon has a similar statute governing the oral modification of written agreements. Additionally, Barinaga alleges in her complaint that the oral agreement to modify the terms of the Loan is reflected in the Trial Modification Plan and she regularly refers to terms set forth in the Trial Plan Agreement in support of her argument that Chase orally agreed to permanently modify the terms of the Loan. To the extent she is relying on the written agreement, *Vissuet* and the California statute on which it relied are inapplicable in that they are limited to "oral agreements" to modify a written agreement.

---

[5]The Loan documents provide that they shall be governed by federal law and the law of the jurisdiction in which the property is located, which is Oregon.

Barinaga noted in her supplemental briefing that Chase "reserved for the first time in the new agreement certain rights to void the agreement if Barinaga filed for bankruptcy" and argued that such a concession "has consistently been found to constitute sufficient consideration to support a loan modification." None of the three cases cited by Barinaga stand for this proposition. In *Kattar v. Demoulas*, 739 N.E.2d 246, 254-55 (2000), the court found that plaintiff's agreement to expend additional money and its best efforts to develop property serving as collateral for a loan and to give the lender the right to reject any sale offer was sufficient consideration to support an extension of the loan until the property was sold. In a footnote, the court mentioned that loan modification agreements which materially change the terms of the original loan "may be supported by additional consideration such as higher interest rates or waivers of rights that the debtor would otherwise have in the event it files for bankrupcty" and cited to the two other cases relied upon by Barinaga – *In re Club Tower L.P.*, 138 B.R. 307 (Bankr. N.D. Ga. 1991) and *In re Riley*, 188 B.R. 191 (Bankr. D.S.C. 1995). *Kattar*, 739 N.E.2d at 254 n.6. The issue in *Club Tower* was whether a debtor had filed a bankruptcy petition in bad fath to delay and frustrate the efforts of a creditor to enforce its rights and remedies. In describing the loan and forbearance agreement between the parties, the court noted that the debtor had given the creditor the right to immediate relief from the stay should the debtor file bankruptcy. *Club Tower*, 138 B.R. at 309. The court did not consider whether the grant of this right was adequate consideration for the forbearance agreement. In *Riley*, the court considered the validity and application of a "waiver of stay" provision in a forbearance agreement when the underlying default had been cured prior to the filing of bankruptcy. The parties stipulated that the forbearance agreement, which included the "waiver of stay" provision, was properly executed. *Riley*, 188 B.R. at 192. Therefore, the court did not address the adequacy of the consideration supporting the

agreement. The cases relied on by Barinaga do not establish that granting Chase the right to void the modification agreement in the event Barinaga filed bankruptcy is sufficient consideration to support an oral agreement to modify the Loan.

Barinaga's payment of amounts already due under the Loan is not sufficient consideration to support the enforcement of the alleged oral agreement to permanently modify the terms of the Loan. The California statute relied on by the court in *Vissuet* does not apply to the Loan and Barinaga has failed to offer proper authority for her argument that granting Chase the right to void the agreement in the event she filed bankruptcy serves as consideration for the oral agreement to permanently modify the Loan. Accordingly, the court finds that Barinaga has failed to allege adequate consideration to support her claim for breach of an oral agreement to modify a written contract.

B. Substitute Consideration

In her briefing filed after oral argument,[6] Barinaga raised, for the first time, three possible interpretations of her breach of contract claim which would make Chase's oral agreement to permanently modify the Loan enforceable without consideration. She argues that her pleadings could be read to support a claim for either an accord and satisfaction or an executory accord. She also asserts a claim based on the doctrine of promissory estoppel.

An accord and satisfaction "creates a new, substituted contract that discharges the debtor's liability and constitutes an affirmative defense to an action on the original debt." *Les Schwab Tire*

[6]At oral argument, the court raised the possibility that a novation had occurred which made the oral agreement to modify the Loan enforceable and allowed Barinaga the opportunity to brief this issue. In her supplemental briefing, Barinaga concedes that novation is not applicable but then raises these additional arguments in its stead.

*Ctrs. of Or., Inc. v. Ivory Ranch, Inc.*, 63 Or. App. 364, 366 (1983). The original contract is totally extinguished and is replaced by the terms of the new contract. *Savelich Logging Co. v. Preston Mill Co.*, 265 Or. 456, 461-2 (1973). Generally, this "results where a debt is unliquidated or disputed in good faith, the debtor offers a sum on the condition that it be received as full payment and the creditor accepts it." *Les Schwab,* 63 Or. App. at 367 (*citing Kilander v. Blickle Co.*, 280 Or. 425 (1977)). Here, there is no allegation of a disputed debt or an offer to pay that debt in full for a specified amount. The amount of the debt Barinaga owes Chase is undisputed – Barinaga merely wished to decrease the monthly payments due under the Loan. All other terms of the Loan remained in full force and effect. There was no accord and satisfaction in this instance.

In the context of an executory accord, the obligations under the original contract are not extinguished until the new contract is fully performed. *Savelich Logging*, 265 Or. at 462. "The right to enforce the original claim is merely suspended and is revived by the debtor's breach of the new agreement." *Id.* Even assuming that Barinaga was allowed to enforce Chase's alleged oral agreement to modify the terms of the Loan, Barinaga remained obligated to perform many obligations under the terms of the Loan and Chase was entitled to enforce those obligations. For example, Barinaga was obligated under the Loan documents to preserve, maintain, and protect the Property. Chase's alleged oral agreement to modify the interest rate or monthly payments due under the Loan did not extinguish this obligation and Chase retained the right to take steps necessary to preserve the Property should Barinaga fail in this regard.

Even if Barinaga had alleged the elements necessary to support an accord and satisfaction or an executory accord, the Oregon Supreme Court has held, in a case similar to the one before the court, that "accords, like all other contracts, must be supported by sufficient consideration."

*Portland Mortgage Co. v. Horenstein*, 162 Or. 243, 249 (1939). In *Horenstein*, plaintiff initiated an action to recover sums due on a loan on which defendants had defaulted by not paying amounts they were obligated to pay under the terms of the loan, including principal, interest, taxes, insurance premiums, and assessments. *Id.* at 245. The parties entered into a written agreement wherein plaintiff agreed to reduce the principal amount of the sum secured by the mortgage and extend the time for payment provided defendants paid $10,000 in cash to plaintiff (which was less than the amount then due and owing under the terms of the loan and would be credited to the reduced principal amount), immediately paid the taxes due on the property for the current year, and fulfilled all other obligations required under the mortgage. *Id.* If defendants defaulted on any of their obligations, the mortgage would be reinstated to the full amount and the mortgage could be foreclosed any time thereafter. *Id.* Thereafter, Defendants failed to pay taxes levied against the property in timely manner and plaintiffs filed a foreclosure action. The court found that the payment of a portion of sums then due and owing under the mortgage was not sufficient consideration for the agreement to reduce the principal balance and extend the time for payment. "An agreement to take less than the whole amount of a liquidated claim is not supported by a sufficient consideration and is, therefore, unenforceable." *Id.* at 248. This ruling clearly applies to the facts at issue and bars any argument that Barinaga has successfully alleged an accord and satisfaction or an executory accord.

Finally, Barinaga argues that the doctrine of promissory estoppel relieves her from the obligation to support her breach of contract claim with evidence of valid consideration. Promissory estoppel is a "substitute for consideration, and provides a basis for enforcing a promise as a contract despite lack of consideration, when the promisee has relied on a promise to his or her detriment." *Natkin and Co. v. H.D. Fowler Co.*, 128 Or. App. 311, 321 (1994). Under Oregon law, promissory

estoppel requires: 1) a promise; 2) which the promisor could reasonably foresee inducing the sort of conduct which occurred; 3) actual reliance on the promise; 4) resulting in a substantial change in the promisee's position. *Rick Franklin Corp. v. State ex. Rel. Dept. Of Transp.*, 207 Or. App. 183, 190 (2006). When a party is using promissory estoppel as a consideration substitute for a breach of contract claim on which they are seeking the usual contractual remedies, the party must establish the existence of a definite and enforceable promise. *Kraft v. Arden*, No. CV 07-487-PK, 2008 WL 4866182, at *10 (D. Or. Nov. 7, 2008)(*citing Staley v. Taylor*, 165 Or. App. 256, 261 n.5 (2000)).[7]

The alleged oral representation by Chase that Barinaga was guaranteed a final loan modification on identical terms as the trial modification plan if she made the three monthly payments is not a definite or enforceable promise. The Trial Modification Plan sets forth only the amount of the monthly payment Barinaga was required to pay during the pendency of the modification application process. There is no mention of what the other essential terms of the final modification agreement would be. In light of the expected decrease in the monthly payments due under the Loan, a change in the both the term of the Loan and the interest rate, or a provision for payment in full at the end of the current term, would be required. The absence of these important terms makes the alleged oral agreement impossible to enforce. Accordingly, Barinaga has failed to allege the existence of a definite promise in support of her promissory estoppel argument.

Barinaga is not entitled to rely on the doctrines of accord and satisfaction, executory accord, or promissory estoppel. Consequently, she remains obligated to establish the existence of valid

---

[7]The cases also mentioned that promissory estoppel may be used when a party relies on an indefinite promise but only reliance damages are available. Based on the allegations of Barinaga's complaint, specifically her request for specific performance of the contract, a she is clearly not relying on this form of promissory estoppel.

consideration in support of her oral modification to a written agreement. Barinaga has failed to meet that obligation.

C. Assuming Adequacy of Consideration

Even if the court were to assume that the oral agreement to permanently modify the Loan was supported by proper consideration, Barinaga's allegations do not support a claim for breach of an oral agreement to modify a written contract. A meeting of the parties' minds on the essential terms of an oral agreement is required to prove the existence of such an agreement *Pacificorp v. Lakeview Power Co.*, 131 Or. App. 301, 307 (1994). First, the Trial Plan Agreement, signed by Barinaga after the alleged oral agreement was reached, clearly states that "[i]f all payments are made as scheduled, we will reevaluate your application for assistance and determine if we are able to offer you a permanent workout solution to bring your loan current." This language is contradictory to the agreement Barinaga claims she made with Chase where permanent modification of the Loan would absolutely occur provided she made the three monthly payments. In light of this, the allegations establish, at the least, the absence of an agreement on whether the permanent loan modification was automatically forthcoming. Additionally, as noted above, the agreement sets forth only the portion of the original monthly payment required to be made during the pendency of the loan modification application and does not address whether the interest rate and payment term would be modified, or how the principal and accruing but unpaid interest would be paid at the end of the thirty-year loan term in the event those terms remained the same. While a meeting of the minds is not required on all terms, the allegations of the Complaint represent a meeting of the minds on only one essential term – the initial monthly payment.

To the extent Baringa intended to rely on the terms of the Trial Plan Agreement in support

of her breach of contract claim, it is evident that she has received what was promised and has no claim for breach of that written agreement. In the Trial Plan Agreement, Chase promised only to reevaluate Barinaga's application for assistance and determine if it was able to offer her a permanent workout solution to bring her loan current. Even assuming that the Trial Plan Agreement is supported by adequate consideration and is an enforceable agreement, Barinaga received everything she was entitled to under the express terms of that agreement.

The court finds that, even viewing the allegations of the Complaint as true, Barinaga has not alleged the existence of valid consideration for the oral agreement, the absence of a need for consideration, a meeting of the minds on all essential terms of the oral agreement, or a breach of the Trial Plan Agreement. Barinaga has failed to allege a viable claim for breach of contract in her First Claim for Relief.

II. Second Claim for Relief - Breach of the Duty of Good Faith and Fair Dealing

In her Second Claim for Relief, Barinaga alleges that Chase breached its duty of good faith and fair dealing under the Loan and the oral agreement by:

1. Making repeated misrepresentations about the nature of the trial modification plan;

2. By requesting a secret BPO and instructing the broker to misrepresent the nature of her visit to the Barinaga residence;

3. By breaching the Loan agreement for the purpose of attempting to strip the equity in the property; and

4. By accepting over $25,000 of payments under the guise of a condition precedent to a previously negotiated contract when it had no intention of performing under the agreement.

(Compl. ¶ 25.)

The implied, contractual duty of good faith and fair dealing is a well-recognized part of Oregon common law. *Best v. United States Nat'l Bank of Oregon*, 303 Or. 557, 561 (1987). This duty requires that the parties to a contract not act in a way that destroys or injures the rights of the other, *Perkins v. Standard Oil Co*, 235 Or. 7, 16 (1963), or that frustrates or defeats the object of the contract. *Warnock v. Bonneville Gen. Agency, Inc.*, 271 Or. 634, 639 (1975). The contractual good faith doctrine "emphasizes faithfulness to an agreed common purpose" and is designed to "effectuate the reasonable contractual expectations of the parties." *Best*, 303 Or. at 562-3 (citations omitted.) But, "it is only the objectively reasonable expectations of parties that will be examined in determining whether the obligation of good faith has been met." *Tolbert v. First Nat'l Bank of Oregon*, 312 Or. 485, 494 (1991)(footnote omitted). "The obligation of good faith does not vary the substantive terms of the bargain . . . , nor does it provide a remedy for an unpleasantly motivated act that is expressly permitted by contract . . . ." *United States Nat'l Bank of Oregon v. Boge*, 311 Or. 550, 567 (1995). The duty of good faith is implied "only if the parties have not agreed to an express term that governs the issue." *Oregon Univ. Sys. v. Oregon Pub. Employees Union*, 185 Or. App. 506, 511 (2002).

This court has already determined that Barinaga failed to allege facts necessary to establish the existence of an oral agreement to permanently modify the terms of the Loan. Therefore, any contractual duty owed by Chase to Barinaga derives solely from the written provisions of the Loan documents and the Trial Plan Agreement. *See Herron v. Wells Fargo Financial, Inc.*, 299 Fed. Appx. 713, 714-5 (9th Cir. 2008)(No duty of good faith and fair dealing exists in the absence of an enforceable contract.).

Barinaga's primary complaint is that Chase elected to foreclose on the Property after

receiving the broker's price opinion for the purpose of benefitting from Barinaga's equity in the Property. The Deed of Trust gave Chase the option, in the event of Barinaga's breach of the Loan documents and subject to Barinaga's right to cure the default, to either accelerate the debt and require immediate payment of all sums secured by the Deed of Trust or "invoke the power of sale and any other remedies permitted by [a]pplicable [l]aw." (Mendoza Decl. Ex. 2 ¶ 22.) The Trial Plan Agreement provided that all of the original terms of the loan remained in full force and effect.

Barinaga was clearly in default under the terms of the Loan documents and had not cured the default. Chase's decision to proceed with foreclosure based on Barinaga's default, regardless of reasons for the decision, is specifically authorized by the contract and is within the objectively reasonable expectations of the parties to the contract. Chase did not breach its duty of good faith and fair dealing by deciding to proceed with foreclosure even if it was for the alleged purpose of stripping the equity in the Property. Although this might seem a hard result, the court cannot say that it is a result not contemplated or known to Barinaga when she entered into the Loan, as it is a right reserved to Chase in clear language in the Loan documents.

Similarly, in the event Barinaga failed to perform under the terms of the Loan, the Deed of Trust authorizes Chase to "do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. . . . Securing the Property includes, but is not limited to, entering the Property . . . ." (Mendoza Decl. Ex. 2 ¶ 9.) Chase's decision to have the Property appraised was expressly permitted by the terms of the Deed of Trust. The allegation that the broker initially misrepresented the purpose of her interest in the Property does not alter the fact that Chase had a right to access and inspect the Property, and does

not establish a breach of the duty of good faith and fair dealing.

Barinaga alleges that Chase's misrepresentations about the nature of the Trial Plan Agreement is a breach of the duty of good faith and fair dealing. Chase had no contractual duty under the Loan to offer Barinaga a possible loan modification and, in doing so, exceeded its obligations under the Loan. Furthermore, the Trial Plan Agreement provided that if Barinaga paid half of the amount she was already obligated to pay under the Loan in a timely manner for three months, Chase would "reevaluate [Barinaga's] application for assistance and determine if we are able to offer you a permanent workout solution to bring your loan current." Clearly, under the terms of the Trial Plan Agreement, which Barinaga signed after the misrepresentations were made, Chase had the option of not agreeing to a permanent modification. Chase acted in accordance with the written agreements in exercising the options provided in the express terms of those agreements.

Finally, Barinaga alleges that Chase breached its duty of good faith and fair dealing when it accepted more than $25,000 with the knowledge that it would never permanently modify the Loan. Again, the Loan documents do not require Chase to modify the terms of the Loan to allow Barinaga to remain in the Property while she was in default. In fact, the Loan documents expressly authorized Chase to receive monthly mortgage payments of $10,440 and, if Barinaga failed to make the payments, to accelerate the Loan and foreclose on the Property. The allegations that Chase, after allowing Barinaga to remain in the Property for ten months without making mortgage payments, accepted monthly payments equal to half of the monthly mortgage payments due under the Loan and agreed to consider Barinaga's application for a loan modification after a three-month trial period is not indicative of bad faith.

As noted by Chase, this case is very similar to *Uptown Heights Associates Ltd. P'ship v.*

*Seafirst Corp.*, 320 Or. 638 (1995), in which the Oregon Supreme Court held that a lender's decision to foreclose on an apartment complex despite requests from the owner to extend the date of the foreclosure to allow for the completion of negotiations between the owner and a third party did not violate the duty of good faith and fair dealing when the loan documents gave the lender the unconditional right to foreclose in the event of the owner's default. In *Uptown*, the plaintiff borrowed $7,500,000 from defendant to fund the construction of an apartment complex. The loan was secured by a deed of trust on the complex, required monthly interest payments with all principal due January 1, 1991, and contained a provision allowing for two six-month extensions. *Id.* at 642. The plaintiff had difficulty meeting the terms of the loan and in October 1990, the defendant agreed to a six-month extension through July 1991. When the plaintiff was unable to make a full interest payment in April 1991, the defendant had the property appraised and determined that the property was worth $8,850,000. In June 1991, the defendant elected not to grant the second six-month extension, threatened foreclosure, and forced the plaintiff to market the property for a quick sale. *Id.* The plaintiff located two possible buyers and requested postponement of the legal foreclosure proceedings to facilitate the sale. The defendant refused to postpone the foreclosure, even after the plaintiff provided a signed purchase agreement for the property, purchased the property for the amount of the loan at the foreclosure sale, and then sold the property to the plaintiff's buyer for the same amount. *Id.* at 642. The plaintiff initiated an action against the defendant asserting claims for both contractual and tortious breach of the duty of good faith and fair dealing and three claims for intentional interference with economic relations. *Id.* at 643.

The complaint alleged the existence of the loan, the defendant's right to foreclose on the loan in the event of default, and the plaintiff's default. *Id.* at 645 The Oregon Supreme Court found that

the complaint, which did not include allegations that defendant caused the fault to occur or that it failed to follow the proper method of foreclosure, failed to allege a claim for breach of the contractual duty of good faith and fair dealing. *Id.* at 645-48. The court stated that:

> if a written contract between the parties expressly allows for a particular remedy by one of the parties, in the face of a specified breach, the parties' objectively "reasonable expectations" under the contract include the invocation of that remedy in the face of that breach. The party invoking its express, written contractual right does not, merely by doing so, violate its duty of good faith.

*Id.* at 645.

Barinaga argues that *Uptown* is distinguishable from the case at hand in two particulars. First, *Uptown* involved a commercial lender on a commercial project, not a residential loan made by one of the nation's largest financial institutions. This factual difference, however, does not affect the applicability of the relevant legal principle. The underlying loan documents in each case allowed the lender to foreclose in the event of a default by the borrower and the allegations contained in complaints alleged the existence of a loan, a foreclosure remedy, and a default. The purpose of the loan or the size of the lender does not alter the obligations of the party or the allegations of the complaints. Second, Barinaga notes that while the lender in *Uptown* indicated that it would work with the plaintiff, Chase explicitly promised that it would modify the Loan on particular terms. Again, this is a distinction that does not affect the court's analysis. In both situations, the representations did not alter the terms of the loan documents or the lender's unrestricted right to foreclose on the property if the lender was in default. The court finds that the reasoning of the Oregon Supreme Court in *Uptown* is applicable and instructive.

Here, Chase had the unconditional right to accelerate the debt and foreclose on the Property once Barinaga was in default and failed to cure. The fact that, according to Barinaga's allegations,

Chase represented to Barinaga that it would modify the Loan to allow partial payments, accepted the partial payments for five months, and then decided not to modify the Loan, does not alter, in any way, the fact that in December 2009, Barinaga was still in default under the Loan and Chase still had the unconditional authority under the Loan documents to foreclose on the Property, or that Chase had the option not to permanently modify the terms of the Loan under the provisions of the Trial Plan Agreement. Barinaga fails to allege facts that would support a claim for breach of the contractual duty of good faith and fair dealing. Barinaga's Second Claim for Relief is dismissed for failure to state a claim.

III. Third Claim for Relief - Fraud in the Inducement

Barinaga alleges that "Chase entered into the Loan agreement alleged herein with no intention of performing," and that, "[a]s a result of Chase's fraud, Barinaga has suffered economic damages." (Compl. ¶¶ 29-30.) Based on the other allegations in the Complaint, which Barinaga incorporates by reference into her Third Claim for Relief, the "Loan agreement" refers to the alleged oral agreement to permanently modify the terms of the Loan to allow for continuing payments of $5,124.50 and Barinaga relied on Chase's representations that the trial modification plan would automatically result in a final modification on identical terms in signing the Trial Plan Agreement and making the five payments. (Compl. ¶¶ 7-9, 11.) Chase asserts that Barinaga fails to allege her fraud claim with the sufficiency required by FED. R. CIV. P. 9(b) and fails to allege all of the *prima facie* elements of a fraud claim.

*A. Pleading Fraud with Particularity*

Allegations of fraud must satisfy the requirements of FED. R. CIV. P. 9(b) to survive a motion to dismiss. Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other general conditions of person's mind may be alleged generally." Rule 9(b) requires a plaintiff to "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986). The intent of the rule is to ensure that defendants receive sufficient notice of the particular misconduct to allow them to adequately defend themselves and to prevent the filing of claims merely to uncover unknown wrongs. *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

Barinaga alleges that between July and December of 2009, Chase employees "repeatedly represented that the trial modification plan was a mere condition precedent to the final modification plan and the three months compliance with the trial modification plan would automatically result in a final modification on identical terms" and that "the modification was still on track and the final modification would be forthcoming" despite the fact that Chase never intended to permanently modify the Loan. (Compl. ¶ 8, 10.) She further alleges that based on these misrepresentations, she made five payments of $5,124.50 that she otherwise would not have made. While these allegations may not be as specific as Chase would like, they are sufficient to meet the requirements of Rule 9(b). *See In Re Glenfed Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)("In certain cases, to be sure, the requisite particularity might be supplied with great simplicity.").

*B. Prima Facie Elements of Fraud Claim*

To allege a *prima facie* claim for fraud, a plaintiff must plead: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that the representation should be acted on by the person and in the manner reasonably

contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury. *Webb v. Clark*, 274 Or. 387, 391 (1976)(quoting *Rice v. McAlister*, 268 Or. 125, 128 (1974). "One species of a misimpression that will give rise to an actionable claim in fraud is a promise made with the knowledge that it will not be performed or with reckless disregard about whether it will be performed." *Estate of Schwarz v. Philip Morris Inc.*, 206 Or. App. 20, 39 (2006)(citing *Elizaga v. Kaiser Found. Hospitals*, 259 Or. 542, 548 (1971)).

Chase argues that Barinaga failed to allege that she had the right to rely on the misrepresentation, that she was ignorant of the falsity of the misrepresentations, or that she was damaged as a result of the misrepresentations. Chase asserts that because Barinaga signed the Trial Plan Agreement, which contained language that Chase would reevaluate her application for a loan modification once she successfully completes the three-month trial period, she knew that she did not have the right to rely on the representation that her loan modification would definitely be granted. However, Barinaga alleges that the representation was false because Chase never intended to permanently modify the terms of the Loan. This is distinctly different than alleging that Chase's representations were false because it retained the right to consider the application for assistance at a later date. Under the latter scenario, Barinaga retained the reasonable belief that her loan would be permanently modified once she successfully completed the trial period and reasonably relied on Chase's representation that, at that time, the permanent loan modification would be approved. Had Barinaga alleged that Chase's misrepresentations were based on the fact that she did not receive the loan modification, her claim would fail because she could not have relied on the representation knowing that Chase still had the opportunity to reevaluate, and possibly deny, her application.

Even assuming that the Trial Plan Agreement did put Barinaga on notice that Chase had no intent to grant her a permanent loan modification, the language in the Trial Plan Agreement does not defeat the later alleged misrepresentations by Chase. After she completed the trial period, Chase continued to represent to Barinaga that the permanent loan modification was still on track, that the final modification would be forthcoming, and that the delay was caused by a backlog of modification finalizations for other homeowners. These representations are consistent with the language in the Trial Plan Agreement and, as pleaded, support a reasonable belief that Chase had evaluated Barinaga's application for assistance and had decided to permanently modify the Loan.

Barinaga's knowledge of the language contained in the Trial Plan Agreement did not put her on notice that Chase always planned to foreclose on the Property and had no intention, at any time, of granting Barinaga a permanent modification of the Loan. Accordingly, Barinaga's execution of the Trial Plan Agreement is not evidence that she knew that the representations were false or that her reliance on those representations were not reasonable.

Chase also argues that because Barinaga was obligated under the Loan to make monthly payments of $10,440, her payments of $5,124.50 made in reliance on Chase's misrepresentations do not constitute a "consequent or proximate injury." Chase is correct, and the court has noted, that Barinaga's five payments of $5,124.50 were payments on a existing obligation. While the payments do not constitute adequate consideration for the creation of a new contract, the court concludes that, at this stage, the payments serve as evidence of an injury to Barinaga or, in the alternative, that Barinaga has otherwise alleged a resulting injury .

The allegations of the complaint make clear that Barinaga was unable to make her mortgage payments under the Loan and that her only hope of keeping the Property was to accept assistance

from Chase in the form of a loan modification. The only reason Barinaga made the $5,124.50 monthly payments was because Chase assured her that she would receive the desired loan modification if she successfully completed the trial period, during which she was required her to make the payments. Clearly, Barinaga has sufficiently alleged that she would not have made the payments had she known that Chase never intended to approve her request for a loan modification. Additionally, Barinaga alleges that, as a result of Chase's fraudulent conduct, she suffered $100,000 in economic damages. It is unclear what form the alleged damages will take or whether the five payments made in reliance on the misrepresentations are included in this amount but that point is one for discovery. The complaint alleges an injury that Barinaga suffered as a result of Chase's fraudulent activity.

While the allegations in the Complaint do not allege each and every element of a *prima facie* claim for fraud with precision and specificity, the allegations provide enough information about Barinaga's theory to allow Chase to frame a reasonable defense. Under the federal court's notice pleading, which requires a short and plain statement of a plausible claim supported by factual allegations, Barinaga's allegations of fraud are sufficient to gives Chase fair notice of the claim and ground upon which it rests and to satisfy the requirements of Rule 9. *See Ashcroft*, 129 S. Ct. at 1950; FED. R. CIV. P. 8(a).

*Conclusion*

Chase's motion (#3) to dismiss is GRANTED with prejudice with regard to Barinaga's First Claim for Relief for breach of contract and Second Claim for Relief for breach of the duty of good faith and fair dealing, DENIED with regard to her Third Claim for Relief for fraud, and DENIED as moot with regard to her Fourth Claim for Relief for violation of the Oregon Trade Practices Act

based on her withdrawal of that claim.

DATED this 26th day of October, 2010.

JOHN V. ACOSTA
United States Magistrate Judge